**John MUNN, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14688.**

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1969.

Rehearing Denied Oct. 14, 1969.

McElroy & Vaughn, Chickasha, for plaintiff in error.

Joseph Humphrey, Dist. Atty., Kerry W. Cawood, Asst. Dist. Atty., for defendant in error.

NIX, Judge:

The plaintiff in error, John Munn, hereinafter referred to as "defendant", was charged in the District Court of Grady County with the crime of Lewd Molestation. [The information more specifically alleged that the defendant on the 21st day of August, 1967, committed the crime of Lewd Molestation in that he did then and there invite, entice and persuade one Brenda Taylor, a female child, to go alone with him to a secluded, remote and secret place approximately two miles South of the City of Chickasha, Grady County, Oklahoma, with the unlawful and felonious intent to lewdly and lasciviously look upon, touch, maul and feel of the body and private parts of said child in an indecent manner and in a manner relating to sex matters and sex interest. That the defendant was a male person of the age of 19 years and that the said Brenda Taylor was of the age of 11 years.] This case came on for trial by jury on the 18th day of October, 1967, and on the 19th day of October, 1967, the jury returned a verdict finding the defendant guilty as charged in the information and assessed his punishment in the State Penitentiary for a term of Five Years. This appeal is brought by the defendant from that judgment and sentence.

From the record, it appears that the victim of the crime, Brenda Taylor, 11 years old, testified that on the 21st day of August, 1967, she and her 6 year old cousin and 7 year old sister were playing in Shannon Springs Park in Chickasha. The victim further testified that she was playing with a duck when the defendant, John

Munn, approached her and told her to put the duck down and come with him. She further testified that she thought the defendant, John Munn, was a lake ranger. The victim further testified that she was crying and thought she was in trouble for molesting the duck; that the defendant led her to his car and told her that she was in trouble. That he told her that he did not want the other girls to go with him, just her, that he then took her in his automobile and drove out of Shannon Springs Park and by a circuitous route, described in the testimony, took her to a point approximately two miles South of the City of Chickasha, at which point he turned off of the roadway onto a dead end road and told the victim to take her clothes off. The victim then jumped from the automobile screaming hysterically, and ran back some distance to a nearby house belonging to the witness, Mrs. Clyde Bennett, and told her what had happened. Mrs. Bennett's testimony beginning at page 67 of the casemade corroborates the child's testimony in so far as her mental anguish and physical condition at the time of the escape from the defendant, John Munn. Shortly after the time of the commission of this crime, the defendant appeared at the Villager Drive Inn and engaged in a conversation with his friend, Robert Lynn Undem. The witness, Robert Lynn Undem, testified that the defendant told him what he had done and that the defendant had told him that he, the defendant, intended to rape the said Brenda Taylor. The account given by Robert Lynn Undem as related to him by the defendant parallels almost exactly the account of the incident given in the testimony of the victim, Brenda Taylor, and further corroborates with the testimony of Mrs. Bennett.

The defendant took the stand in his own behalf, and testified that he saw Brenda Taylor allegedly abusing a duck in the park, and this was his reason for approaching her. That she just followed him and got in his car, and his intentions were to take her to her parents. He stated that he did not tell her to take her clothes off, and that he had no intention of harming her. On cross-examination, he could not explain why he turned in the opposite direction away from the park and where he allegedly was taking Brenda.

Defendant's first allegation of error is that the jury arrived at its verdict by guess and chance method contrary to the court's instructions. This Court has carefully read the testimony presented at the motion for new trial, which was some 12 days after the jury had been discharged, and find no impropriety in what allegedly occurred in the jury room. This was not "chance" or "casting lots", etc., which the statute excludes.

Furthermore, it has long been the law that the sanctity of the jury room cannot be invaded. This Court has held many times, and most recently in Cortez v. State, Okl.Cr., 415 P.2d 196, that:

"Jurors will not be permitted to impeach or contradict their verdict by affidavits, or otherwise, after they have been discharged from the jury and mingled with the public."

As stated above, we do not find any misconduct in this testimony, and do not consider it proper under any circumstances.

Defendant's second allegation of error is that the trial court erred in admitting certain testimony as a part of the res gestae. More specifically, he refers to the testimony of the witness for the state, Mrs. Clyde Bennett. We have carefully read the objectional part of the testimony referred to by defendant, beginning at page 78 of the casemade, and find the trial court's ruling to be correct. At the time Brenda Taylor made the statements to Mrs. Bennett, she was in a state of shock, hysterical, and crying. The testimony shows that the victim was still crying and hysterical after the statement was made. Under such circumstances, her condition would preclude the probability of the statement being deliberately made, and this is particularly true when the child victim's

age is taken into consideration. This Court stated in the case of Frazee v. State, 79 Okl.Cr. 224, 153 P.2d 637:

"On a trial for rape, declarations of the prosecutrix made under such circumstances as will raise the reasonable presumption that they are spontaneous utterances of thought created by, or springing out of, the alleged assault, and made so soon thereafter as to exclude the presumption that they are the result of premeditation and design, are admissible as part of the res gestae."

This Court has stated repeatedly, as in the very early case of Chastain v. State, Okl. Cr.App., 287 P. 826:

"It is not possible to define the term 'res gestae' by any exact definition which will fit all cases; the term, in a general way, may be defined as the circumstances, facts, and declarations that grow out of the main fact, and shed light upon it, and tend to explain it, and made at a time so near, either prior or subsequent to the main act, as to exclude the idea of deliberation or fabrication."

And, further:

"No fixed measure of time or distance from the main occurrence can be established as a rule to determine what should be a part of the res gestae. Each case must necessarily depend upon its own circumstances to establish whether the facts offered were a part of the same continuing transaction."

This Court is of the opinion, in view of the prevailing law, that the trial court did not err in permitting Mrs. Bennett to testify as to what Brenda Taylor told her, under the circumstances in this case.

Defendant's third proposition is that there was insufficient evidence to convict defendant of the crime of "Lewd Molestation."

Title 21, O.S.1965 Supp., § 1123, the pertinent part of which reads as follows:

"* * *; or any such person who shall designedly ask, invite, entice, or persuade any child under the age of fourteen years to go alone with him or her or any other persons to any secluded, remote, or secret place, with the unlawful and wilful intent and purpose then and there to commit any crime against public decency and morality, as may now be defined by the laws of Oklahoma, with such child or to in any manner lewdly or lasciviously look upon, touch, maul, or feel the private person or the private parts of such child in any indecent manner or in any manner relating to sex matters or sex interest, shall be deemed guilty of a felony and upon conviction thereof he shall be punished by imprisonment in the Oklahoma State Penitentiary for a term of not less than one (1) year nor more than twenty (20) years. Provided, that the provisions hereof shall not apply unless the accused is of the age of five years or more older than the age of the victim."

This statute sets out the elements of proof necessary to a charge and conviction of Lewd Molestation. In the instant case, it is the opinion of this Court that the State has proved each of these elements:

(1) That the defendant was a male person of the age of 19 years.

(2) That the victim was a female child of the age of 11 years.

(3) That the defendant did instruct the victim to come with him, and the victim testified that she thought he was a lake ranger when he told her to come with him, and that is why she got in the car with him.

(4) Both the victim and the witness, Mrs. Bennett, testified as to the location defendant took the victim as being a one lane, dead-end road, all grown up on each side with weeds, being a remote and secluded place.

(5) The purpose in taking the victim to this secluded place is proven by her testimony wherein she stated the defendant told her to take her clothes off. And, further, by the testimony of the witness, Robert Undem, that the defendant told

him that he intended to rape the girl, and that he did tell her to take her clothes off.

This is more than sufficient proof in the record to prove the crime and to support the verdict of the jury.

■ Defendant's last proposition of error is that the sentence is excessive. With this we cannot agree. It is only one-fourth of the maximum sentence of Twenty Years. And, under the circumstances of this case, we certainly do not find this excessive.

It is, therefore, the opinion of this Court that the defendant had a fair and impartial trial, that the issues were fairly submitted to the jury, and that the evidence is sufficient.

The judgment and sentence of the District Court of Grady County is accordingly affirmed.

BRETT, P. J., and BUSSEY, J., concur.