David LAVICKY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–424.

Court of Criminal Appeals of Oklahoma.

Aug. 3, 1981.

Rehearing Denied Sept. 9, 1981.

Peter M. Keltch, Wright & Keltch, Cherokee, for appellant.

Jan Eric Cartwright, Atty. Gen., Charles S. Rogers, Asst. Atty. Gen., Deputy Chief, Criminal Division, Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, David Lavicky, was convicted in the Alfalfa County District Court, Case No. CRF-79-7, of the crime of Larceny of an Automobile, a violation of 21 O.S. 1971, § 1720. He was sentenced to three (3) years in the custody of the Department of Corrections.

At approximately one o'clock on the morning of January 19, 1979, a pickup truck belonging to Bruce and Ronnie Eckhardt was stolen from the front yard of the Eckhardt residence in Cherokee, Oklahoma. State's witnesses Jerry Coleman and Anthony Joslin testified in the State's case-in-chief that on the night of January 18, they and the appellant drove from Enid to Alva where they planned to go to a nightclub. After burglarizing a car in the parking lot of the nightclub, they decided to go back to Enid. As they drove through Cherokee, the appellant instructed the driver, Anthony Joslin, to turn down a particular street. They drove down the street, went around the block, and on the second time down the street, the appellant asked Joslin to stop. Appellant got out of the car, then walked over and got into the cab of a pickup truck in the front yard of the Eckhardt residence. Joslin and Coleman testified that, after the appellant got out, they drove down to the corner. They heard an engine start, turned their heads and saw the appellant drive the truck out of the front yard. Both witnesses testified that on the way back to Enid the appellant, driving the stolen truck, passed them on the highway and they did not see

him the rest of the night. On rebuttal, however, both witnesses recanted their earlier testimony and admitted following the appellant to his home.

The State also called Gary Mootz who testified that he and the appellant stripped the stolen pickup, took it to a point a few miles north of Enid where they dumped it into a dry river bed and set the truck on fire.

Several witnesses identified various truck parts as parts they had bought from the appellant. These were identified by Ronnie Eckhardt as parts that came from his stolen truck.

In his first assignment of error, appellant asserts that the trial court erred in admitting the testimony of Lisa Kaiser because she was the appellant's common law wife and thus the appellant was entitled, under Oklahoma law, to assert the marital privilege.

■ Prior to the adoption of the new evidence code, 22 O.S.1971, § 702, made it clear that in all but a very narrow range of circumstances the marital privilege could be invoked to prevent one spouse from testifying against the other. In contrast, the new evidence code, 12 O.S.Supp.1980, § 2504(B) limits the marital privilege, in criminal cases, to "confidential communications." Although, 22 O.S.1971, § 702, has not been specifically repealed, basic rules of statutory construction, as well as the Evidence Subcommittee's Note to § 2504, indicate a general legislative intent to supercede all prior legislation on the subject. See also 14 Tul.L.J. 227 at 292 (1978).

■ Assuming the marital privilege applies only to confidential communications, the question arises as to whether the testimony of Miss Kaiser breached any confidential communications. Confidential communications between husband and wife are those made when they're alone, or are those expressly made confidential, or are of a confidential nature induced by the marital relationship, the disclosure of which are calculated to disturb the marital relationship. See 97 C.J.S. Witness § 268.

■ Communications are not confidential if made in the presence of third parties. *DeWolf v. State*, 95 Okl.Cr. 287, 245 P.2d 107 (1952). Since the statements of appellant to which Lisa Kaiser testified were made in the presence of third parties, this contention is without merit. See also *Baker v. U. S.*, 329 F.2d 786 (10th Cir. 1964), and *Hildebrandt v. State*, 22 Okl.Cr. 58, 209 P. 785 (1922).

■ Raised in the second assignment of error is the issue of endorsement of witnesses. Miss Kaiser was not, until the day of trial, endorsed on the information as a witness, and the appellant argues that the trial court abused its discretion in refusing to grant a continuance when she was called as State's witness in rebuttal.

It has long been the rule of this State that a witness need not be endorsed on the information if the testimony is *clearly* in rebuttal, *Martin v. State*, 596 P.2d 899 (Okl. Cr.1979). Also *Boydston v. State*, 79 Okl.Cr. 172, 152 P.2d 701 (1944).

In *Mills v. State*, 594 P.2d 374 (Okl.Cr. 1979), this Court held,

> . . . rebuttal testimony may be offered to explain, repel, counteract, disprove, or destroy facts given in evidence by an adverse party, as well as to clarify a disputed point, notwithstanding that the same testimony might have been introduced in chief, and the introduction of such evidence is a matter of discretion for the trial court which will not be ground for reversal absent an abuse thereof. *Schneider v. State*, 538 P.3d 1088 (Okl.Cr. 1975)

Clearly the testimony of Lisa Kaiser did directly rebut the alibi defense established by the testimony of the appellant's parents.

■ Next, appellant asserts that the trial court erred in refusing to grant a mistrial due to the tactics of the State in recalling the State's witnesses, Jerry Coleman and Tony Joslin, as rebuttal witnesses. It is argued that they were not rebuttal witnesses but were called for the purpose of being impeached by the State to change their testimony to conform to the testimony of Lisa Kaiser, such change surprising defense

counsel who had relied on their testimony earlier in the proceedings. Clearly by offering the rebuttal testimony of witnesses Joslin and Coleman the State has not sought to impeach its own witnesses. Such testimony was offered substantively to corroborate the rebuttal testimony of Lisa Kaiser, and any impeachment effect was strictly incidental. See *Glen Falls Insurance Co. v. Johnson*, 403 P.2d 229 (Okl.1965).

Also raised is whether this evidence was properly admitted in rebuttal. The rebuttal testimony of witnesses Coleman and Joslin did support the testimony of Miss Kaiser and thereby indirectly rebutted the testimony of Mr. and Mrs. Lavicky. See *Mills v. State*, supra. This Court finds that the trial court did not abuse its discretion in admitting this evidence on rebuttal.

■ As his fourth allegation, the appellant asserts that the prosecutor commented on his right to remain silent when he stated in closing that the appellant had not presented any evidence. The statement was, "Now there has not been one shred of evidence that David Lavicky did not steal the pickup." The appellant objected and then moved for a mistrial, which was denied. This Court finds that this was not a comment on the appellant's right to remain silent, but that it is comparable to those cases in which the prosecutor has commented on uncontroverted evidence, which comment has been interpreted to indicate a failure of the defense to present any evidence, not just his own testimony. See *Coots v. State*, 560 P.2d 592 (Okl.Cr.1977). Here the appellant's parents testified but this does not eliminate the fact that this statement could be reasonably interpreted as referring to the defense's failure to present evidence which would contradict the case-in-chief. This proposition is without merit.

As his fifth assignment, appellant contends that the State did not make a proper showing of unavailability and due diligence in attempting to locate witness Donnie Bodelle; therefore, it was error to admit into evidence his testimony given at the preliminary hearing. *Newton v. State*, 403 P.2d 913 (Okl.Cr.1965).

Due diligence requires more than the issuance of a subpoena and the return of it "not found." Testimony should be offered as to what efforts, if any, were made to serve the subpoena. *Holmes v. State*, 501 P.2d 830 (Okl.Cr.1972). In the present case, Officer Burnett testified that he checked Donnie Bodelle's last two addresses, checked with the Post Office and public utilities and his last known place of employment. This Court finds that due diligence was exercised.

Finally, it is asserted that, although the trial court sustained the appellant's motion to suppress, the judge erred in overruling the pretrial motion to suppress and thereby allowed prejudicial evidence to be seen and heard by the jury. The appellant asserts as error the failure of the trial judge to sustain the appellant's pretrial motion to suppress a screwdriver set obtained as a result of an illegal search of the appellant's truck. However, the appellant has failed to properly preserve for appeal this issue. The general rule is that a party who may be prejudiced by the improper admission of evidence should object as soon as it becomes apparent the evidence would be relied upon by the opposing party. See *Venable v. State*, 567 P.2d 1006 (Okl.Cr. 1977). By failing to object when testimony regarding the screwdriver set was first elicited the appellant has waived any error.

The judgment and sentence is Affirmed.

BUSSEY and CORNISH, JJ., concur.